# SUPREME COURT,

## STATE OF KANSAS.

## JANUARY TERM, 1905.

*PRESENT:*

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. WILLIAM R. SMITH,
Hon. EDWIN W. CUNNINGHAM,
Hon. ADRIAN L. GREENE,       } Justices.
Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. CLARK A. SMITH,

THE ATCHISON, TOPEKA & SANTA FE RAILWAY
COMPANY v. JAMES M. HOLLOWAY.

No. 14,020. (80 Pac. 31.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Passenger.* When a person enters a railroad station and purchases a ticket, intending to take a passenger-train soon to arrive, he acquires the status of a passenger, and it becomes the duty of the railroad company to exercise reasonable care to provide him a safe approach to the train and reasonable time and opportunity to get on board.

2. —— *Negligent Running of Trains at Station.* The running of a freight-train between a station and a passenger-train, thus blocking the access of passengers to the passenger-train during the time it stops at the station, is negligence as to waiting passengers who suffer injury by reason of insufficient opportunity to get on board.

3. —— *Boarding a Moving Train.* An attempt of a passenger to board a moving train, although attended with some danger, is not, under all circumstances, contributory negligence.

4. —— *Obvious Danger—Contributory Negligence.* If the

1—71 KAN.

speed of the train and the difficulties in the way of boarding it are so obviously dangerous that a person of ordinary prudence would not attempt to get on the train, a passenger who makes the attempt and is injured is guilty of such contributory negligence as will bar a recovery.

5. ——— *Contributory Negligence Held a Question for the Jury.* In this case an injured passenger—a strong, able-bodied man, accustomed to getting on and off cars—attempted to board a train moving at the rate of about four miles an hour, which he was waiting to take but which he had not been afforded a reasonable opportunity to board while it was stopped. The day was clear, and the ground where he made the attempt was smooth. *Held,* that it cannot be said, as a matter of law, that the attempt was so obviously dangerous as to constitute contributory negligence, and that whether it was such negligence was a proper question to leave to the jury.

6. ——— *Proof of Speed of Trains.* The speed of a train may be shown by an ordinary witness who has given some attention to the running of trains and has a knowledge of time and distance. The inexperience of a witness in timing the speed of trains, and the fact that he has given little attention to the matter, goes to the weight, rather than to the admissibility, of his testimony.

Error from Lyon district court; DENNIS MADDEN, judge. Opinion filed March 11, 1905. Affirmed.

*A. A. Hurd, O. J. Wood,* and *Lambert & Huggins,* for plaintiff in error.

*Kellogg & Madden, Frank P. Walsh,* and *E. R. Morrison,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: James M. Holloway sued to recover damages for injuries sustained while attempting to board a train of the Atchison, Topeka & Santa Fe Railway Company at Strong City. He purchased a ticket and awaited the arrival of a passenger-train upon which he intended to take passage, but about the time the passenger-train was expected a freight-train pulled in on the track next to the station, and while it

was passing the passenger-train arrived on a track beyond the one occupied by the freight-train. The passenger-train only stopped a brief time, and when the freight-train had passed the station the passenger-train was moving out. Holloway ran around the end of the freight-train and undertook to board the slowly moving passenger-train, but, his foot slipping into an opening in the back of the step of the car, he lost his balance, and was thrown under the wheels of the car and badly hurt.

The negligence alleged against the railroad company was that it did not provide safe means of access to the train, or sufficient time and opportunity for plaintiff to board it. The running of the freight-train between the waiting-room in which Holloway was seated and the passenger-train, thus concealing that train and blocking the approach to it, the failure to stop the passenger-train a sufficient time to permit passengers to board it, the omission to give notice of its arrival and the leaving of an unprotected opening in the steps of the car are mentioned as specific grounds of negligence. It is alleged that, as a consequence of the railroad company's negligence, Holloway was thrown down, dragged over a hundred feet, his arm crushed so that amputation became necessary, and his right foot and ankle permanently crippled. The answer of the railroad company was that the injuries were in no way the result of its negligence, but were in fact caused by plaintiff's want of care in getting on a train while it was in motion. The verdict of the jury and the answers to special questions were in favor of Holloway.

The principal contention is that Holloway's evidence showed that the negligence of the railroad company was not the proximate cause of the injuries, but that they were due to the contributory negligence of himself, and that, therefore, the demurrer to his evidence should have been sustained.

The testimony offered in his behalf tended to show that he was fifty-six years old, in good health, strong and able-bodied; that he was engaged in traveling for a mercantile company and had had much experience in boarding and alighting from trains; that after buying his ticket he seated himself at a window of the waiting-room to watch for the coming train; that while there a freight-train came through on the track next to the depot, and that when his attention was called to the fact that the passenger-train was in he hurried around the back of the freight-train, and when he reached the passenger-train it was moving. He had two grips with him which he threw upon the platform of the baggage and combination car. One of the grips remained there and the other fell to the ground. He picked up the light grip and undertook to board the train, catching the hand-rail on the end of the following coach. He attempted to step on the train when it was running about four miles an hour, but his foot slipped into the opening in the step, his hand was jarred loose, and he fell under the car and suffered the injuries which have been mentioned. His plight was seen by the conductor, who pulled the cord and stopped the train, but not until Holloway had been dragged about 100 feet. According to the testimony, the stop made by the passenger-train was very brief—placed by some witnesses at from thirty to sixty seconds, and the conductor himself fixed the length of time at from thirty to forty-five seconds. It appears that several passengers who intended to board that train were unable to do so before the second stop, which was made because of the injury to Holloway. He undertook to get on the train after it had started, but he said it was moving slowly, and that he had frequently boarded cars which were moving much more rapidly. Measuring the testimony by the rule applicable under a demurrer to evidence, we think it was sufficient to carry the case to the jury on the alleged neg-

ligence of the railroad company, as well as on the contributory negligence of Holloway. (*Brown, Adm'r, v. A. T. & S. F. Rld. Co.,* 31 Kan. 1, 1 Pac. 605; *Wolf v. Washer,* 32 id. 533, 4 Pac. 1036; *Christie v. Barnes,* 33 id. 317, 6 Pac. 599; *K. C., Ft. S. & G. Rld. Co. v. Cravens,* 43 id. 650, 23 Pac. 1044.)

When Holloway entered the station and purchased a ticket with the intention of taking the coming train he acquired the status of a passenger, and was entitled to protection as such. It was the duty of the company to exercise reasonable care to provide him a safe approach to the passenger-train, a reasonable opportunity to get on board, and a reasonable time to do so. The running of a freight-train between the waiting-room of the station and the passenger-train, thus blocking the passage to the passenger-train during the entire time it stopped at the station, was manifest negligence. If, for any reason, the passing of the freight-train on the track next to the station was a necessity, the passenger-train should have been held a sufficient time after the way had been cleared to afford passengers an opportunity to get on board. The freight-train, however, blocked access to the passenger-train during the short time that the latter stopped at the station. It is the duty of a passenger to be reasonably alert and prompt in boarding a train, but considering that the freight-train concealed the coming passenger-train and blocked the passage from the station to it we cannot say that Holloway was not reasonably prompt and diligent in his efforts to get on board the cars. The stop of the passenger-train was very brief—altogether too much so, considering the surrounding circumstances.

The case of *Terry v. Jewett,* 78 N. Y. 338, involved the act of running a freight-train in front of a passenger-train, cutting off the passage of those who were seeking to board the latter. The freight-train, which was passing at a rate of six to eight miles an hour,

struck and killed a person who was endeavoring to get on the passenger-train. It was held that the act of running the freight-train in front of the other was an act of culpable negligence. In the course of the decision the court remarked, at page 342:

"It may be assumed that a railroad corporation, in the exercise of ordinary care, so regulates the running of its trains that the road is free from interruption or obstruction where passenger-trains stop at a station to receive and deliver passengers. Any other system would be dangerous to human life, and impose great risks upon those who might have occasion to travel on the railroad."

In the same case it was said that the ringing of the bell, or the sounding of the whistle, is no answer to the charge of negligence, as those signals are not intended as a notice to passengers seeking to get on a train at a station and are not likely to be noticed in the confusion of two trains passing each other under the circumstances. The court added, at page 343:

"It certainly was quite an unusual occurrence and a palpable disregard of the rules which require reasonable care and diligence to avoid accident to run a freight-train so as to interfere with passengers who were on their way to the cars."

The halting of the train at the station was in a way an invitation to passengers to board it. They naturally would assume that a reasonable opportunity would be given them to get on board the cars, and since that was not given, and the train moved out before they had time to board it, the company had a right to anticipate that some of the waiting passengers would attempt to get on the moving train, if it appeared that it could be done without danger. There is reason, therefore, to say that the company should have foreseen that an injury would likely result from its negligence in blocking access to the cars and its failure to give a reasonable opportunity to passengers to board the train. Whether its negligence was the proximate cause of the

Railway Co. v. Holloway.

injury was at least a fair question for the determination of the jury.

There remains the question whether Holloway's act in attempting to board the moving train was negligence which precludes a recovery. It is insisted that we should determine, as a matter of law, that his attempt was contributory negligence. He could see that the boarding of the train while moving was attended with some danger. The boarding or alighting from a moving car is not, under all circumstances, contributory negligence. (*A. T. & S. F. Rld. Co. v. McCandliss, Adm'r,* 33 Kan. 366, 6 Pac. 587; *S. K. Rly. Co. v. Sanford,* 45 id. 372, 25 Pac. 891, 11 L. R. A. 432; *A. T. & S. F. Rld. Co. v. Hughes,* 55 id. 491, 40 Pac. 919.)

Judge Thompson, in treating of this question, said:

"It cannot be affirmed that a person is guilty of contributory negligence, as matter of law, from the mere fact that he attempts to board a railway-train while it is in motion. If the train does not stop at the proper stopping-place for a sufficient length of time to enable the passenger to get on before it starts, and the passenger, thus coerced by the negligence of the company, attempts to board the train while it is slowly moving, and is injured in the attempt, contributory negligence will not be imputed to him, but he will be allowed to recover damages." (3 Thomp. Neg. § 2995.)

The case of *Johnson v. West Chester & Philadelphia Railroad Co.,* 70 Pa. St. 357, was an action to recover damages for the injury of one who was trying to get on a moving train. It started before passengers had sufficient time to get on board, and the plaintiff, encumbered with a valise and a number of packages, missed his footing and his arm was crushed by the wheels of the car. It was insisted that it should have been declared as a matter of law that he was negligent. The court remarked, at page 365:

"The fact appears to be clear, that a reasonable time for the transfer was not given, and that the plaintiff, with all his effort to make haste, was unable to make the connection in consequence of this want of time.

Now, though the train was distinctly in motion, so that a bystander, cool and unconcerned, could see it visibly running on the track, are we to say, as a matter of law binding on the jury, that a passenger, having a right to go on the train, and seeing himself about to be left improperly by the wayside, is guilty of culpable legal negligence, if he should essay to reach his destination, no matter how slow the motion in running might be, or how little danger was apparent to him? He may be guilty of negligence, but of this the jury should judge under the circumstances."

In volume 6 of the Cyclopedia of Law and Procedure, at page 644, we find the following:

"Usually it is said that the question as to whether under the circumstances of the case the passenger was negligent in attempting to get on board a moving train is one of fact, and therefore to be determined by the jury, unless the facts are so unequivocal in their character as to make it proper for the court to determine the question."

Was the attempt of Holloway one which a reasonably prudent man would have undertaken? As the authorities cited show, it is a question to be determined by the surrounding circumstances, including the velocity of the train and the apparent danger from boarding it. In its charge the court advised the jury that, where a train is moving at such a rate of speed, or where the place of the passenger's ascent to the car, or the circumstances connected with his attempt to board it, are obviously so perilous and dangerous that a person of ordinary prudence would not attempt to get on the train, the act of the person injured in so doing is such contributory negligence as will bar all recovery. The jury were also instructed that, where the company was negligent in the premises, the act of boarding a moving train is not to be regarded as an act of contributory negligence on the part of the passenger, unless the danger to be apprehended by such attempt is apparent to the mind of a reasonably prudent and careful man. In other portions of the charge

they were advised that if by the exercise of ordinary care and prudence Holloway could have seen that the train was in motion, and that he could not with reasonable safety get upon the step, he should have desisted from the attempt and waited for the next train. The circumstances surrounding the attempt were called to the attention of the jury, and the question of Holloway's negligence was left for their decision. Among the circumstances for consideration were the facts that he was a strong, able-bodied man, accustomed to travel and to getting on and off the cars. The day was clear and the surface of the ground where the attempt was made was reasonably smooth. The train had only started and was moving at a speed about equal to a brisk walk. A lady moved along with the train and mailed a letter thereon about the time that Holloway approached it. He was anxious to go on his journey and was disturbed by the interference of the freight-train and the negligence of the railroad company. He had to decide quickly whether to get on the moving cars or abandon his trip. In view of these and other circumstances we think it cannot be said, as a matter of law, that the danger was so obvious that a man of ordinary care and prudence would not have attempted the boarding of the train. Judge Thompson, in considering whether such an attempt is one of fact to be decided by a jury, or a matter of law to be decided by the court, remarked:

"It may be said here that whether or not it will be deemed negligence for a person to attempt to board a train, after it has started to move from the station, will depend upon the speed at which the train is moving, the physical condition of the passenger himself, and other surrounding circumstances. It is well known that trainmen habitually board their trains after they commence to move, and that passengers frequently do so; and it would seem to follow, from the mere consideration of this fact, that negligence cannot be imputed to such an act as matter of law; though clearly it may be performed under such conditions that a jury could

not hesitate about the conclusion of contributory negligence." (3 Thomp. Neg. §2856.)

See, also, *Mills v. M. K. & T. Ry. Co.*, 94 Tex. 242, 59 S. W. 874, 55 L. R. A. 497; *Baltimore & Ohio Railroad Co. v. Kane*, 69 Md. 11, 13 Atl. 387, 9 Am. St. Rep. 387; *Phila., Wilm. & Balto. R. R. Co. v. Anderson*, 72 Md. 519, 2 Atl. 2, 8 L. R. A. 673, 20 Am. St. Rep. 483; *C. & A. R. R. Co. v. Gore*, 202 Ill. 188, 66 N. E. 1063, 95 Am. St. Rep. 224; *Filer v. Railroad Co.*, 49 N. Y. 47, 10 Am. Rep. 327; *Distler v. Long Island R. R. Co.*, 151 N. Y. 424, 45 N. E. 937, 35 L. R. A. 762; *Fulks v. The St. Louis & S. F. Ry. Co.*, 111 Mo. 335, 19 S. W. 818; *Birmingham Railway & Electric Co. v. Brannon, Adm'x*, 132 Ala. 431, 31 South. 523.

The objections to the testimony of witnesses as to the speed of the train cannot be upheld. The speed of a train is not a question of science, but may be shown by an ordinary witness who has given attention to the running of trains and possesses a knowledge of time and distance. The inexperience of a witness in timing the speed of trains, or the fact that he has given the matter little attention, goes to the weight, rather than the admissibility, of his testimony. Some of the witnesses whose testimony was challenged had given some attention to the speed of trains. All were competent to express their opinions, but, of course, the value of their testimony was affected by their experience, and that was something to be measured by the jury.

The charge of the court is criticized, but we think it fairly covered the facts of the case and stated the pertinent principles of law. The one relating to proximate cause may be somewhat involved, but we cannot say that it is incorrect, nor that it was in any sense misleading.

All of the errors assigned have been examined, but in none of them do we find material error, and therefore the judgment of the court is affirmed.

All the Justices concurring.