# Alabama Great Southern Railway Co., v. McFarlin.

## Crossing Accident.

(Decided Nov. 16, 1911. Rehearing denied Dec. 21, 1911.
56 South. 989.)

1. *Railroads; Crossing Accident; Wantonness.*—Evidence as to whether the deceased fell and as to whether the train was run at an excessive rate of speed being in conflict, and there being evidence that the engineer and conductor knew that the crossing was greatly frequented, and there being evidence that there was no signal of approach saving the waving of a red flag, the meaning of which was not shown to be known to the public or to the deceased, made the question of wantonness one for the jury.

[Alabama Great Southern Railway Co. v. McFarlin.]

2. *Same; Pleading; Variance.*—Where the allegation was that the death of decedent was caused by an engine being run against or upon the deceased, and the proof showed that the death was caused by being struck by a car at the other end of the train from engine, if there was a variance, it was immaterial.

3. *Same; Wantonness; Instructions.*—An instruction that if those in charge of the train did all in their power to stop it after discovering deceased's peril, then the verdict should be for the defendant, was properly refused, as omitting all reference as to how the train was approaching the crossing; the action being for wantonly backing the train on to one at a crossing.

4. *Same.*—A charge asserting that if a train was moving at a speed of from three to eighteen miles per hour, the red flag was being waved by the crossing watchman, the conductor was walking in front of or at the side and near the front end of the car first reaching the crossing, and the deceased went on the track in front of or in dangerous proximity to said car, and as soon as the conductor realized the deceased's danger, he called to him, and also gave the engineer the stop signal, and the engineer immediately used all known means to stop the train, the verdict should be for the defendant, is defective in not stating what was meant by the waving of the red flag, or whether it was understood by intestate or the public, or whether the calling of the conductor to the deceased was at such a distance, or under such circumstances as to be heard by the deceased.

5. *Charge of Court; Argumentative.*—The court will not be put in error for refusing argumentative instructions.

6. *Same; Conformity to Issues.*—Where the case was submitted only on the issues of wantonness, charges having reference only to simple negligence, were properly refused.

7. *Trial; Argument of Counsel.*—Where the defendant objected to remarks of plaintiff's counsel and the objection was sustained, and no motion was made to exclude the remarks, the only ruling invoked was decided favorably to the defendant, and the court was not in error in refusing to grant a new trial based on such alleged error.

8. *New Trial; Refusal to Grant.*—This court will not disturb the refusal of the trial court to grant a new trial to the defendant in an action for the death of plaintiff's decedent, because plaintiff, the widow of deceased, was present with her children at the trial, and was weeping.

(Anderson and Mayfield, JJ., dissent.)

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Action by Mrs. Alice McFarlin, administratrix of Reuben W. McFarlin, deceased, against the Alabama Great Southern Railroad Company, for death of intestate. Judgment for plaintiff, and defendant appeals. Affirmed.

[Alabama Great Southern Railway Co. v. McFarlin.]

The facts sufficiently appear in the opinion of the court, taken in connection with the dissenting opinion. The following charges were refused to defendant: (1) General charge for the defendant. (3) Affirmative charge for defendant as to the second count. (4) "The court charges the jury that in your sound discretion you may impose merely nominal damages, if you believe from the evidence that the death of Reuben McFarlin was caused by negligence so slight, or so characterized by mitigating circumstances, as that the jury would be justified in the imposition of such punishment only as is involved in the assessment of merely nominal damages." (5) "The court charges the jury that if you believe from the evidence that the negligence complained of is so slight, or so characterized by mitigating circumstances, as that the jury would be justified in the imposition of such punishment only as is involved in the assessment of merely nominal damages, you may impose such damages, if you believe from the evidence that plaintiff is entitled to a verdict." (6) "If you believe from all the evidence in this case that the agents or servants of the defendant in charge of its train that struck Reuben McFarlin did all in their power to stop the train after the discovery of his peril, then you must find a verdict for the defendant." (7) "If you should believe from all the evidence that the train of the defendant was moving at the speed of from 3 to 18 miles an hour at the time of the accident, that the red flag was being waved by the crossing watchman, that the conductor of the train was walking in front of or at the side and near the front end of the car which first came across the crossing, and that the deceased, Reuben McFarlin, went upon the track, in front of and in dangerous proximity to said car, and that as soon as the conductor realized the danger of the deceased he called to deceased and gave

the engineer the stop signal, and that the engineer immediately used all the means at hand known to skillful engineers to stop said train, then you must find a verdict for the railroad company."

A. G. & E. D. SMITH, for appellant. The evidence in the case failed to show any wilful, wanton or intentional negligence on the part of appellant's servants and the lower court should have given to the jury written charges numbered 1 and 3—requested by the appellant. —*George P. Ry. Co. v. Lee*, 92 Ala. 262; *Glass v. M. & C. R. R. Co.*, 94 Ala. 581; *Georgia P. R. R. Co. v. Ross*, 100 Ala. 509; *A. G. S. R. R. Co. v. Burgess*, 116 Ala. 509; *L. & N. R. R. Co. v. Anchors*, 114 Ala. 492; *M. & C. R. R. Co. v. Martin*, 117 Ala. 367; *L. & N. R. R. Co. v. Richards, Admr.*, 100 Ala. 365; *A. G. S. R. R. Co. v. Hall*, 105 Ala. 599; *Burson v. L. & N. R. R. Co.*, 116 Ala. 198; *Birmingham Ry. L. & P. Co. v. Brown*, 43 South. Rep. 342; *Robinette v. A. G. S. R. R. Co.*, 132 Ala. 501; *L. & N. R. R. Co. v. Crawford*, 89 Ala. 240. The speed of the train as shown by the evidence, being from 3 to 18 miles an hour did not tend to show wilful, wanton or intentional negligence and the lower court should have given to the jury written charges numbered 1 and 3, as requested by the appellant.—*Georgia P. Ry. Co. v. Lee*, 92 Ala. 262; *H. A. & B. R. R. Co. v. Sampson*, 91 Ala. 560; *A. G. S. R. R. Co. v. Linn*, 103 Ala. 134; *H. A. & B. R. R. Co. v. Maddox*, 100 Ala. 618; *Robinette v A. G. S. R. R. Co.*, 132 Ala. 501. The evidence shows there was no *intentional* killing of the deceased, and no such reckless indifference as to supply the bad element of intentional wrong, and the lower court should have given to the jury written charges numbered 1 and 3, requested by the appellant.—*L. & N. R. R. v. Crawford*, 89 Ala. 240; *M. & C. R. R. Co. v. Martin*, 117 Ala. 367. The evi-

dence shows that deceased knew of the conditions, yet
recklessly took his chances of going over the track of the
appellant in front of the approaching cars, and the lower
court should have given to the jury written charges
numbered 1 and 3, requested by the appellant.—*Georgia
P. Ry. Co. v. Lee*, 92 Ala. 262; *M. & C. R. R. Co. v.
Martin*, 117 Ala. 367; *Glass v. M. & C. R. R. Co.*, 94 Ala.
590; *R. R. Co. v. Houston*, 95 U. S. 697; *Scofield v. R.
R. Co.*, 114 U. S. 614; *Gothard v. A. G. S. R. R. Co.*, 67
Ala., 114; *L. & N. R. R. Co. v. Crawford*, 89 Ala. 240;
*H. A. & B. Ry. Co. v. Sampson*, 91 Ala., 564.   The evi-
dence shows that the operation of the train was not the
direct and proximate cause of the death of the deceased,
but was the remote cause thereof, and that the proxi-
mate cause of his death was an efficient intervening
cause, in that he stumbled and fell on the track imme-
diately in front of the moving train and in consequence
of that was killed, and the lower court should have
given to the jury written charges numbered 1 and 3,
requested by the appellant.—*Western Ry. Co. v. Mutch,*
97 Ala. 104; *L. & N. R. R. Co. v. Quick*, 125 Ala. 553;
*Woodward Iron Co. v. Williams,* 106 Ala. 254; *City
Council of Montgomery v. Townsend,* 80 Ala. 489 (497) ;
*M. & O. R. R. Co. v. Brewing Co.*, 146 Ala. 404; *A. G. S.
R. R. Co. v. Vail*, 155 Ala. 382; *Stanton v. R. R. Co.*, 91
Ala., 382; *L. & N. R. R. Co. v. Kelsey,* 89 Ala. 287;
*Thompson v. L. & N. R. R. Co.*, 91 Ala. 500.   The evi-
dence showed a variance between the allegations of the
second count on which the case was tried and the proof,
in that the count charges that the engineer "wantonly
or intentionally caused or allowed said *engine* (italics
ours) to run upon or against said intestate," thereby
causing his death, while the evidence showed that de-
ceased was killed by a car at the opposite end of the
train from the engine, and 18 cars from the engine, and

the lower court should have given to the jury written charges 1 and 3, requested by the appellant.—*A. G. S. R. R. Co. v. McWhorter,* 47 South. Rep., p. 84; *Smith v. Causey,* 28 Ala. 655; *Hood v. Pioneer Co.,* 95 Ala. 461; *H. A. & B. R. R. Co. v. Maddox,* 100 Ala. 618; *Stewart v. Tucker,* 106 Ala. 319; *M. & E. Ry. Co. v. Culver,* 75 Ala. 587; *Warner-Smiley Co. v. Cooper,* 131 Ala. 297; *A. G. S. R. R. Co. v. Smith,* 81 Ala. 299; *Mansell, Admr. v. N. A. R. R. Co.,* 138 Ala. 548. Even if appellant was not entitled to the general affirmative charge, the evidence was of such character that it should have been left to the jury to say whether or not in their judgment they would impose merely nominal damages, and the lower court should have given to the jury written charges numbered 4 and 5, requested by the appellant.—*Shannon v. Jefferson County,* 125 Ala. 384; *R. & D. R. R. Co. v. Freeman,* 97 Ala. 289. The lower court should have set aside the verdict and should have allowed appellant a new trial on its motion made in the cause.—*Florence Cotton & I. Co. v. Field,* 104 Ala. 471; *Scott v. State,* 110 Ala. 48; *E. T. V. & G. Ry. Co. v. Bayliss,* 75 Ala. 466 (471); *Tannehill v. State,* 48 South. Rep., 662.

HARSH, BEDDOW & FITTS, for appellee. Wantonness was a question for the jury.—*B. R. L. & P. Co. v. Ryan,* 148 Ala. 76; *C. of Ga. Ry. Co. v. Partridge,* 136 Ala. 587; *A. G. S. v. Guest,* 136 Ala. 321; s. c. 144 Ala. 373; *Montgomery St. Ry. v. Rice,* 142 Ala. 674. For the same reason, the court properly denied the defendant the affirmative charge. The charges as to remote or intervening cause was properly refused.—*B. R. L. & P. Co. v. Hinton,* 146 Ala. 273; *A. G. S. v. Johnson,* 128 Ala. 285; *Kitchens v. Elliott,* 114 Ala. 290. The variance complained of was immaterial, as the fact remained

that the engine was pushing the car that caused the death.—22 Enc. P. & P. 537 and 551; *Rogers v. The State,* 50 Ala. 103. The whole course of the trial showed that if there was a variance, it was waived.—*L. & N. v. Thornton,* 117 Ala. 274; *R. & D. R. R. Co. v. Farmer,* 97 Ala. 141. The charge as to nominal damages was properly refused as it related to simple negligence when that issue had been eliminated and the other charges along that line either unduly emphasized certain features of the cases, or were purely argumentative.—Authorities supra. There was no objection and exception to the argument of counsel, but in any event, it was based on the issues.—*B. R. & E. Co. v. Wildman,* 119 Ala. 553; 107 Ala. 496; *Cross v. The State,* 68 Ala. 476.

SIMPSON, J.—This is an action by the appellee for damages on account of the death of plaintiff's intestate (who was her husband), claimed to have been the result of the employee of defendant in charge or control of an engine wantonly or intentionally causing or allowing said engine to run upon or against said intestate. There was also a count in simple negligence, which was charged out, on account of contributory negligence.

The appellant claims that the general charge should have been given in favor of the defendant, first, because the evidence failed to show willful or wanton conduct.

There was evidence tending to show that the place where the intestate was killed was in a populous district, where the public are wont to cross with such frequency and in such numbers within the knowledge of the conductor and engineer as to charge them with knowledge of the probable consequences of maintaining a high rate of speed at such place without signals of approach.—*Highland Ave. & Belt. R. v. Robbins,* 124

Ala. 114, 116, 27 South. 422, 82 Am. St. Rep. 153; *Ala. Gt. South. R. R. Co. v. Guest,* 144 Ala. 373, 380, 39 South. 654; *Ala. Gt. South. R. R. Co. v. Guest,* 136 Ala. 353, 34 South. 968; *B. R. L. & P. Co. v. Ryan,* 148 Ala. 69, 71, 41 South. 616. We cannot say as a matter of law that the train did not approach the crossing in such a manner as to constitute wantonness. The evidence is in conflict as to the speed at which the train was moving. There is evidence tending to show that no signals of approach were given save the waving of the red flag, and there is no proof that the meaning of the waving of the flag was known or made known to the intestate, or that it was known by the public generally. Even if the falling of the intestate could be considered as an efficient intervening cause, the evidence is in conflict as to whether or not he did fall. The question as to whether the servants of defendant were guilty of wanton conduct was, under all the circumstances of this case, a matter for the jury to consider. Consequently there was no error in the refusal to give the general charge, as requetsed by the defendant, being charges 1 and 3.

It is next insisted that there is a variance between the allegation of the complaint that the servant of defendant "caused or allowed said engine to run upon or against said intestate" and the proof that it was one of the cars attached to the engine which ran against him, and not the engine itself. So far as the rights and liabilities of the parties are concerned, it is immaterial whether the engine or the car ran against the intestate. The engine was the instrument which caused the collision, and, whether the intestate was struck by the engine, it was the engine which caused the death, and, if there was negligence or wantonness in any one, it was in the management of the engine. We do not find any-

thing in our reports contrary to this holding. The case
of *Smith v. Causey*, 28 Ala. 655, 658, 65 Am. Dec. 372,
was an action under a "highly penal statute" (see s. c.
22 Ala. 570), and the court held that the averment that
the injury was done by the dogs of the defendant was
descriptive of the tort complained of, and there could
be no recovery on proof of injury by other dogs. This
court has said that, "where a variance in the allegations
and proof is relied on to defeat an action, such variance
must be of a material or essential fact" (*Peck, Adm'r,
v. Ashurst*, 108 Ala. 438, 19 South. 784) ; also that "an
exact correspondence of allegation and proof is not re-
quired. It is enough that the one substantially corre-
sponds with the other."—*Wilson v. Smith*, 111 Ala.
176; 20 South. 136.

In the case of *North Birmingham Street Railway v.
Calderwood*, 89 Ala. 247, 253, 254, 7 South. 360, 18 Am.
St. Rep. 105, the variance was material, because the
liability of the defendant under the law was different
according as the stopping of the car was on the east
side or the west; one being the lawful stopping place
and the other not. In the case of *Pryor v. L. & N. R. R.
Co.*, 90 Ala. 32, 35, 8 South. 55, the court says: "As
the company was not under the same rule of duty to
keep in good repair the road bed on the outside of the
rails as on the inside and between the rails,  *   *   *
we incline to the opinion that there was a fatal vari-
ance between the allegations of the complaint and the
proof," and the case was decided on other points with-
out regard to the variance. In the case of *Western
Railway of Alabama v. Sistrunk*, 85 Ala. 352, 357, 5
South. 79, 81, it was held that proof of the injury at a
different time and place (that is, "between the 16th
and 20th of September," in place of "on the 20th," and
"within 150 yards of said station," in place of "within

75 or 100 yards") did not constitute a material variance. In the case of *Hood v. Pioneer M. & Mfg. Co.,* 95 Ala. 461, 11 South. 10, the proof showed the plaintiff to be in an entirely different position from that alleged in the complaint when injured; and the case was not reversed on this.

The same is true as to the case of *Birmingham Electric Co. v. Brannen, Adm'r,* 132 Ala. 431, 433, 31 South. 524; and the court merely says: "To say the least it would be well for the complaint to be amended in this connection." In the case of *Ala. Gt. South. R. R. Co. v. Fulton,* 150 Ala. 300, 305, 43 South. 832, while the court remarks that there was a variance between the allegation that the noises were made while the engine was approaching the crossing, and the proof that they were not made until after it had passed the crossing and was returning after being reversed, in the direction of the plaintiff, yet it goes on to place the decision on other grounds. In the case of *Ala. Gt. South. R. R. Co. v. McWhorter,* 156 Ala. 269, 280, 47 South. 84, the material variance was between alleging that the intestate was in the discharge of his duty and the proof placing him in a position not discharging his duty. Even in criminal cases there are a number of decisions to the effect that proof of killing by another weapon of substantially the same kind as that alleged in the indictment does not constitute a variance.—*Hull v. State,* 79 Ala. 32; *Turner v. State,* 97 Ala. 57, 12 South. 54; *Jones v. State,* 148 Ala. 565, 42 South. 997. We hold that there was not such a variance as to call for the giving of the general charge in favor of the defendant.

On this proposition DOWDELL, C. J., and MCCLELLAN, SAYRE, and SOMERVILLE, JJ., concur, and ANDERSON and MAYFIELD, JJ., dissent.

[Alabama Great Southern Railway Co. v. McFarlin.]

Charges 4 and 5 are argumentative, and were properly refused. At any rate, these charges refer to simple negligence, which was eliminated from the case.

Charge 6 omits all reference to the manner in which the train approached the crossing, and was properly refused.

Charge 7 does not state what was meant by the waving of the red flag, nor whether it was unedrstood by the intestate or the public, nor does it state whether the calling of the conductor to the intestate was at such a distance or under such circumstances as to be heard by the intestate, and it was properly refused.

On the subject of a new trial, all that is shown in regard to the remark made by the counsel for the plaintiff in his argument is that the defendant objected to the remark, and the court sustained the objection. No motion was made to exclude the remark, nor was any objection offered to the further remarks of counsel. The only ruling being in favor of the defendant, and no exception being reserved, it is difficult to see the basis for an assignment of error either on the application for a rehearing or on this appeal.

As to the presence of the widow, the complainant, with her children, her weeping, etc., while it is improper and unprofessional to have such demonstrations before a jury merely for the purpose of working upon the emotions or prejudices of its members, yet, having in view the strict rules which this court has laid down in regard to reversing the action of the primary court in the granting or refusing of a new trial we cannot say the court erred in this particular.

The judgment of the court is affirmed.

DOWDELL, C. J., and MCCLELLAN, SAYRE and SOMERVILLE, JJ., concur.

ANDERSON and MAYFIELD, JJ., dissent.

ANDERSON, J.—(dissenting.)—I think there was such a variance between the allegation and the proof as to entitle the defendant to the general charge. Count 2 charges that the intestate's death was caused by defendant's servants or agents running an engine upon or against him, and the proof shows that the engine never touched him and never got nearer than 18 car lengths to him, as he was killed by a box car at the other end of the train. The plaintiff could have well charged the instrumentality producing the death to a train and which would be broad enough to cover any part of same, engine, or car, but when he selected a particular part of said train as the instrument which produced the death of the intestate, he should have proved it. He says the engine ran upon or against the intestate, and thus gave the defendant notice that it must defend against this charge, and I am unable to agree that this averment was met by proof that the engine never reached him, and that he was killed by a box car 18 car lengths from said engine. Nor do I think the point narrow or technical, as the plaintiff selected the particular instrumentality by his averment, and should have proven it as stated, and should not be permitted to take the defendant unawares, and prove another distinct instrumentality.—*A. G. S. R. R. Co. v. McWhorter,* 156 Ala. 269, 47 South. 84, and many cases there cited.

MAYFIELD, J., concurs.

MAYFIELD, J.—(dissenting.)—I cannot concur in either the opinion or the decision of the majority in this case, because I believe both to be contrary to a long line of decisions of this court, and not to be supported by a single one. To my mind the effect of the decision is to entirely destroy the doctrine of variance

between the allegation and the proof as to actions and matters of negligence. The decision necessarily decides either that there is no variance between an allegation that the defendant wantonly ran an engine over or against plaintiff, and proof that he wantonly backed a box car or gondola car over the plaintiff, or that, if it be considered a variance, it is immaterial. I cannot agree to either of these propositions. To state the proposition seems to me to answer it differently from the answer of the majority.

The sole alleged wrong upon which the trial was had was that the defendant ran an engine over or against plaintiff's intestate. The undisputed evidence showed that no such thing was done by the defendant or by any other person or corporation; but, on the contrary, the plaintiff's intestate was killed by a box car striking and passing over him. Suppose that this car had been moving by gravity, momentum, or any other force than that of a steam engine. Surely there could be no question but that there was a material variance. If the force had been communicated to the car from a stationary engine, then equally surely there could be no question but there was a variance. How it changes the rule or the effect of the evidence by showing that the power was applied by a moving engine attached to a train of cars of which this car striking the plaintiff was one, when the undisputed evidence shows that the engine was never nearer the intestate before he was killed than 580 feet, I am unable to understand. If the allegation had been that the train struck the deceased, it would have been supported by proof that either a car or the engine struck him.

The legal and necessary effect of the allegation, construing the count against the pleader, was that the intestate was struck by an engine while it was moving

forward, yet the proof showed that he was struck by the rear end of a train while it was moving backwards. The nearest case like this which I have seen is that of *Pennington v. D. G. H. & M. Ry. Co.,* 90 Mich. 505, 51 N. W. 634, wherein the allegation was that the train was moving backward which inflicted the injury, while the proof showed that it was moving forward; and the variance was held material, and the question held to be one that could be raised for the first time on appeal. The uniform practice in this state has been to raise the question by requesting the affirmative charge, and it is justified upon the theory that the plaintiff has failed to prove the case he alleged, and that he cannot and ought not to recover on proof of a different cause of action.—*Touart's Case,* 128 Ala. 61, 67, 29 South. 4. The cases in this state the nearest in point, which are, in my judgment, impliedly overruled by this decision, are: *Fulton's Case,* 150 Ala. 300, 43 South. 832, in which the allegation was that the wrong was committed while the engine was approaching a crossing, and the proof showed that it was after it had passed the crossing; *Hundley's Case,* 151 Ala. 378, 44 South. 195, in which the allegation was that the wrong was committed while plaintiff was on the platform of the car, and the proof showed that it was while she was on the steps of the car; *Brown's Case,* 152 Ala. 115, 44 South. 572, where the allegation was that the injury was sustained on a highway, and the proof showed it to have been some distance from the highway; *McWhorter's Case,* 156 Ala. 269, 47 South. 84, wherein the allegation was that the injury happened while the plaintiff was in the discharge of duties as flagman, and the proof showed that at the exact moment of the injury he had struck his flag in the ground on the track, and had assumed a position some distance from the track;

*Brannon's Case,* 132 Ala. 431, 31 South. 523, wherein it was alleged that plaintiff was when injured, between two particular cars, and the evidence was that he was under the rear one; *Conrad's Case,* 109 Ala. 130, 19 South. 398, in which the allegation was that the injury resulted from the explosion of a boiler on account of defective bolts or screws therein, while the proof showed the defect to have been in a safety valve of the same boiler; *Hood's Case,* 95 Ala. 462, 11 South. 10, wherein it was alleged that the plaintiff was ascending the car when injured, and the proof showed that he was on a platform when so injured; *Pryor's Case,* 90 Ala. 32, 8 South. 55, in which the allegation was that plaintiff stepped into a hole on the railroad track, and the proof was that he stepped into a depression between the ends of two cross-ties just outside the rails; *Smith v. Causey,* 28 Ala. 655, 65 Am. Dec. 372, where the tort alleged was an injury done by defendant's servants with his dogs, and the proof was that the injury was inflicted by the defendant's servants, but with other dogs. In all of these cases the variance was held to be material, and in no one of them, in my opinion, was the allegation so radically different from the proof as it was in the case at bar.

In the last cited case the court spoke as follows: "The plaintiff averred that the dogs were the defendant's; and, although this averment was unnecessary, yet, as it is descriptive of the tort complained of, it cannot be disregarded. The tort alleged is an injury done by the servants with the defendant's dogs. To allow a recovery for an injury done with other dogs would be to set up proof of a cause of action different from that alleged, and of which the defendant had no notice.— 1 Chitty on Pleading, 392; 1 Greenleaf, 63, 64, 65; *Smith v. Causey,* 22 Ala. 569." This case has been

repeatedly cited and followed, and never even criticised. Therein the agency that inflicted the injury was alleged to have been the defendant's servants and dogs, and the proof showed it to have been of the same kind of agency —that is, servants and dogs—but not the identical dogs alleged. In the case at bar the agency was entirely different in kind from that alleged and not merely different in identity. I know that there is now, and has been for a long time, a growing and meritorious tendency in trial courts and appellate courts to disregard immaterial variances, and not to deny recoveries or defenses on account thereof, unless it would otherwise result in injury to the opposite party. I have no fault to find with this modern tendency, but approve it. But it is an equally well settled and meritorious, yet more ancient, rule, and one from which there has been no departure, nor expressed tendencies to depart, that a party can recover only secundum allegata et probata. He cannot allege one right or wrong and prove another. Proof without allegation is as impotent as allegation without proof. Without adhereing to these maxims, the fundamental rights granted in the constitution and in the Magna Charta could not be preserved nor enforced. This is strikingly true as to those that provide that in all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation, and to have a copy thereof; that no person shall be accused, arrested, or detained except in cases ascertained by law and according to the forms which the law has prescribed; that no person for the same offense shall be twice put in jeopardy; that every person for an injury done to him in his lands, goods, person, or reputation shall have a remedy by "due process of law." It is true that most of these provisions are made to apply specially to criminal prosecutions

as distinguished from civil ones; but similar funda-
mental principles are imbedded in the common law of
both England and America to the effect that in civil
suits the defendant has the right to be informed of the
nature and character of the particular claim against
him, to the end that he may defend against it, if he so
desires, and can; and that the plaintiff in his proof is
limited and restricted to the case made by his pleadings.
For, if this were not so, a defendant might be required
to respond once, twice, or even more times to satisfy the
same claim or demand. It is of great importance in the
practice of the law and in the trial of actions that the
distinction in forms of actions should be preserved. The
consequence of such a mistake in the application of a
remedy is often material and fatal. A recovery in tort
will not be allowed in an action on contract.—*Beard v.
Yates,* 5 Thomp. & C. (N. Y.) 76; *Butler v. Collins,* 11
Cal. 391. The statutory rule that a plaintiff to recover
must allege a cause of action and must prove the one
he alleges has not been abolished by the Codes. To
allege one cause of action and prove another is as fatal
to a judgment as would be a failure to allege or prove
any cause of action at all. The allegata and probata
must correspond.—*Beard v. Yates,* 5 Thomp. & C.
(N. Y.) 76; *Butler v. Collins,* 11 Cal. 391. This is true
under the Code practice as well as that at common
law.

All material averments in pleadings must be proven,
and, if a variance occurs between a material count and
proof, the party upon whom lies the burden of proof as
to such averment fails. Immaterial averments, how-
ever, must not be made or proven at all. Hence a vari-
ance as to them is unimportant. So, if the variance
occur as to matter not essential to the action or the
defense, it is of no importance. In tort actions proof

of a part of the allegations in the declaration may be sufficient, provided the part proven is a ground of cause of action. That is, the cause of action in torts must not be proven to the full extent alleged, but in tort actions all matters pertaining to the description of the particular tort must be proven as alleged, because otherwise one tort could be alleged and another proven.— 1 Phil. Ev. 836, 837. To show that the variance was material in this case, let us transpose the allegata and the probata. Then the allegata as to negligence would be that the defendant's servant or agent in charge or control of a freight train consisting of 18 box cars and an engine while backing such train wantonly or intentionally caused or allowed one of said cars which was at the opposite end of the train, and distant about a furlong from the engine, to run upon or against plaintiff's intestate, and wantonly or intentionally caused said intestate's death as aforesaid. The probata would be that the defendant's servant or agent in charge or control of an engine wantonly or intentionally caused or allowed said engine to run upon or against said intestate, and wantonly or intentionally caused said intestate's death as aforesaid. Would there be any doubt as to there being a material variance in such a case? I think not, and do not think that any one would so contend. In substance, in fact, and in law the result should be the same, because to this extent the allegata and probata must correspond. This court judicially knows, and has repeatedly so declared, that the conductor is the person in charge or control of the train, and that the engineer is the person in charge or control of the engine. The negligence or wrong alleged and charged in this case was that of the engineer alone, while that proved (if any was proved) was that of the conductor or the flagman. The undisputed evidence showed that

the engineer was at the opposite end of the train from that at which the accident occurred, and the tender and 18 cars between him and the person injured, who either walked or ran around the pilot of another engine, on a different track 4 feet from the one on which this train was backing in on, and onto the track, right in front of the front car. It therefore clearly appears that it was physical impossibility for the engineer to have known of the danger in time to prevent the injury. He could not possibly have seen intestate or noted his danger even had he been specially looking out therefor. The undisputed evidence shows that the engineer was moving the train in direct accordance with the signals and orders of the conductor and the flagman, who were out there to pilot the train from the switch onto the main line, that he obeyed every signal and order that was given him, and there is not, so far as I can find, in this record, one word or fact to show that he was negligent in the least, or that any or all the engineers on earth could have prevented the catastrophe, situated as he was; yet, if this verdict is true and correct, he is guilty of manslaughter as for the death of the intestate, and should be imprisoned in the penitentiary for not less than one, nor more than five years.—Code, 1907, § 7666. The court in its opinion limits the object and effect of the signals of approach of the train and the flagging thereof to the sole function of warning the public or the person injured. The flagman, the conductor, and the brakeman in this case, not only owed duties to the public and to the intestate, but also to the engineer. It was conclusively shown what their duties were, that the engineer knew of these duties and knew the meaning of the signals, and that he acted in strict accord thereto. They were placed where they were, for the purpose of signaling and warning both the public and

the engineer as to the moving of the train across this thoroughfare. It is shown that he (the engineer) knew these facts, that he relied upon the signals, and obeyed all of them promptly. How can it be said that he was guilty of negligence, much less wantonness, is more than I can understand. There was the conductor whose orders he was bound to obey, and did obey, running along on the ground in front of the train, thereby signaling the engineer to follow him, and he was following him, just as fast as he went and no faster, there was the flagman, whose station was at the crossing, to tell him and the public when to cross and when not to cross, waving the red flag, which signal the undisputed evidence showed meant for the engineer to proceed across the thoroughfares, and for the public to stop. And, whether the public knew these signals or not, the engineer is shown to have been familiar with them and to have obeyed them. It is also shown that the moment the danger signal was given him he obeyed it, promptly obeyed it, but that it was then physically impossible to prevent the injury. How the court can say that this evidence as to the signals to him was not competent to show that he was not guilty of negligence I am unable to understand. I submit that, if the evidence in this case shows or tends to show any negligence on the part of any one, it was negligence on the part of the flagman, the conductor, the brakeman, or of the intestate, and not on the part of the engineer, the only negligence alleged in the complaint.

Appellee, plaintiff below, relies most strongly upon *Partridge's Case,* reported in 136 Ala. 587, 34 South. 927, because the injury in that case occurred at the identical crossing involved in this case; and "thereby hangs a tale"—that which caused the variance in the case at bar. The injury in the *Partridge Case* was

inflicted by an engine moving forward, and not by a car moving backward, as was the injury in this case. But it will be observed that the complaint in this case, touching the negligence charged, copies verbatim et literatim that in the *Partridge Case*, with the exception that the phrase, "said intestate," is substituted for "plaintiff," the person injured in that case not being killed. The majority opinion attempts to distinguish this case from that of *Smith v. Causey*, 28 Ala. 655, 65 Am. Dec. 372, upon the ground that that case was a highly penal statute. The statute in that case was certainly no more highly penal than the statute applicable to this. In the former case, under the facts alleged, and by the statute condemned, the defendant was liable only for double damages, whereas, the damages warranted by the statute in this case are wholly punitive, and are without any limit provided they are such as "the jury may assess," and, in addition, the act condemned is made a criminal offense, a felony, on the part of the engineer or person guilty of the wrong so causing death. Surely the statute in this case is as highly penal as was that in the *Smith-Causey Case*.

